UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RICHARD W. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07CV23 TIA |
| | ) | |
| MICHAEL ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration. The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.    Procedural History

On June 18, 2001, Claimant filed an application for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 334-

42) and an application for Disability Insurance Benefits pursuant to Title II of the Social Security

Act, 42 U.S.C. §§ 401, et seq. (Tr. 94-96).[1]  In the Disability Report Adult completed by

Claimant and filed in conjunction with the application, Claimant stated that his disability began on

February 7, 1994, due to the condition of his back and left shoulder problems.  (Tr. ).  On initial

consideration, the Social Security Administration denied Claimant's claims for benefits.  (Tr. 74-

78).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 72).  On

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer
(Docket No. 12/filed May 14, 2007).

September 18, 2002, a hearing was held before an ALJ. (Tr. 365). Claimant testified and was represented by counsel. (Id.). Thereafter, on December 18, 2002, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 362-71). After considering the request for review, the Appeals Council found the record to be incomplete inasmuch as the hearing tape from the September 18, 2002, hearing had been certified as lost and granted Claimant's request for review on July 30, 2005. (Tr. 359, 361).

Claimant requested a hearing before an ALJ pursuant to the Appeals Council's remand order. (Tr. 299, 386). On December 9, 2005, a supplemental hearing was held before an ALJ. (Tr. 24-59). Claimant testified and was represented by counsel. (Id.). Vocational Expert Jeffrey F. Magrowski, Ph.D., a certified rehabilitation counselor, also testified at the hearing. (Tr. 56-59, 374-77). Thereafter, on May 11, 2006, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 8-22). After considering the contentions raised in the letter of Claimant's counsel, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on December 1, 2006. (Tr. 3-6, 416-17).[2] The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on December 9, 2005

#### 1. Claimant's Testimony

---

[2]The undersigned interprets the Appeals Council's statement that the additional evidence did not provide a basis for changing the ALJ's decision a finding that the contentions raised in the letter of Claimant's counsel was not material. *See* Bergmann v. Apfel, 207 F.3d 1065, 1069-70 (8th Cir. 2000) (whether additional evidence meets criteria is question of law; to be material, evidence must be relevant to claimant's condition for time period for which benefits were denied, and must not merely detail after-acquired conditions or post-decision deterioration of pre-existing condition).

At the hearing on December 9, 2005, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 26-55). At the time of the hearing, Claimant was forty-five years of age and his date of birth is May 30, 1960. (Tr. 28). Claimant attended high school through the tenth grade and received his GED when serving in the National Guard. Claimant weighed 220 pounds and stands at 6'1" and is right handed. (Tr. 28). Claimant is married and has two adult children. (Tr. 41-42). His family provides financial support because neither Claimant nor his wife has a source of income. (Tr. 42). Claimant's wife has medical problems with her back, knee, and foot, and she has also applied for disability. (Tr. 42).

Claimant testified that he last worked a couple of weeks as a farm hand in March of 1995. (Tr. 28). Before working as a farm hand, Claimant last worked in 1993 as a construction laborer for four years. (Tr. 29). Claimant worked as a diesel mechanic for fifteen years and changed jobs because the construction laborer position was a better paying job. (Tr. 29). Working as a diesel mechanic required a lot of heavy lifting and standing eight hours a day, stooping, and crawling. (Tr. 49-50). Claimant stopped working in construction after his second back surgery, and he was no longer able to perform his job duties. (Tr. 29). Working as a construction laborer required a lot of lifting of railroad ties, bags of mortar, and other smaller pieces of wood. (Tr. 50-51). Since 1994 Claimant testified that his condition has not improved to a level where he could return to either of his past positions. (Tr. 51).

Claimant's medical problems include his back and both of his shoulders. (Tr. 29). Claimant first experienced back problems in 1989 when he injured his back when he ruptured a disc while removing a stump from his yard. (Tr. 30). Claimant received medical treatment including surgery three to four months after the injury. (Tr. 30). Dr. Kim at Saint Francis in Cape

Girardeau performed surgery and prescribed physical therapy. (Tr. 31). Claimant testified that the surgery did not really help inasmuch as his left leg and hip still hurt, and he experiences numbness. Claimant returned to work after the surgery and continued to work until he hurt his back the second time moving railroad ties. (Tr. 31).

Dr. Paul Young treated Claimant and referred Claimant to Dr. Chaudhari for his second surgery in 1994 at Saint Anthony's Hospital. (Tr. 32). Claimant testified that his back still hurt after the surgery and his hip pain increased. (Tr. 33). Claimant stopped working in construction and received Workmen's Compensation in the form of a settlement in the amount of $36,000 after the second surgery. (Tr. 33-34). Claimant testified that he could not afford medical treatment after the second surgery, and to date, he still cannot afford medical treatment. (Tr. 34). Claimant applied for but was denied Veterans' Benefits to help him obtain medical assistance. (Tr. 45). Claimant received medical treatment including shots and muscle relaxers for his shoulder pain at the Mental Health Network in 2002. (Tr. 46). Although the doctor recommended Claimant have a MRI on his left shoulder, Claimant could not afford a MRI. (Tr. 46). Claimant's counsel called various facilities including the University of Missouri in Columbia seeking free medical assistance on behalf of Claimant, but the facilities would not provide free treatment. (Tr. 47).

Claimant received Medicaid in 2002-2003 so that he could have surgery on his left shoulder but Medicaid was discontinued after completion of the physical therapy following the complete reconstruction surgery performed by Dr. Hasboro. (Tr. 34-35). At that time, Claimant had medical insurance through his employer, Kessler Farms. (Tr. 36). Dr. Hasboro diagnosed Claimant with bone spurs and a complete tear of the rotator cuff on the left shoulder. (Tr. 36, 47). Claimant could not cite a specific injury to his shoulder but testified that he woke up one

morning experiencing pain in his left shoulder. (Tr. 35). Although Claimant testified that he still experiences pain in both shoulders, he has not been receiving any medical treatment. (Tr. 35). Claimant testified that his left shoulder is weak, and he has problems raising his left arm because of the pain. (Tr. 40-41). Claimant cannot move his right shoulder without experiencing pain. (Tr. 41).

After his second back surgery, Claimant's pain on the left side increased, and he can hardly walk around or sit. (Tr. 36). Claimant testified that he can stand for thirty minutes and then experiences pain on the left side of his lower back and all down his left leg. (Tr. 36-37). Sometimes his left knee will buckle, and he experiences constant and aching pain. (Tr. 37). If the pain starts and Claimant is on his feet, he has to lie flat on the floor. Sometimes sitting helps but sometimes sitting increases the pain. (Tr. 37). Claimant testified that he can sit for thirty minutes. (Tr. 38). Lying flat on the floor is the most comfortable position, and he lies flat on the floor at least once a day. (Tr. 38). Bending causes back and hip pain. (Tr. 39). Claimant cannot lift more than a gallon of milk and can carry a small bag of groceries. Claimant takes over-the-counter pain medication, Aleve and Tylenol. (Tr. 39). In the past, Claimant had taken Flexeril without any side effects and some relief. (Tr. 40). Claimant testified that he cannot afford to pay out of pocket for the Flexeril prescription. (Tr. 48). Sometimes Claimant takes his wife's or mother-in-law's prescription medications including Lorcet Plus. (Tr. 52-53). Claimant testified that he experiences depressive symptoms including significant hostility. (Tr. 53). Claimant has never been treated by a doctor for depression. (Tr. 55).

As to his daily activities, Claimant testified that his daughter helps with the housekeeping and the grocery shopping and assists his wife with the cooking. (Tr. 42-44). Claimant cannot

assist because he can only use part of one arm. (Tr. 43). Claimant drives on occasion but limited distances because of the sitting. (Tr. 43). Claimant visits his mother. (Tr. 44). Before his back injury in 1989, Claimant used to enjoy hunting, fishing, drag racing, and playing basketball with the children. (Tr. 49). Claimant testified that he enjoys reading at home. (Tr. 52). Claimant agreed that he had been sitting for a long time during the hearing and he rated his pain at a level of seven to eight. (Tr. 52). Claimant has problems sleeping more than three to four hours a night. (Tr. 54). Claimant rated the pain in his left shoulder as a nine and the pain in his back as a seven to eight. (Tr. 54). Sometimes the pain interferes with his ability to concentrate and to remember things. (Tr. 55).

### 2. Testimony of Vocational Expert

Vocational Expert Jeffrey F. Magrowski, Ph.D., a certified rehabilitation counselor, testified in response to the ALJ's questions. (Tr. 56). The ALJ asked the vocational expert to assume that because of Claimant's spinal problems he is limited to lifting no more than twenty pounds and ten pounds frequently, to remaining in a set position for a long period of time, to standing more than thirty minutes, and to sitting more than forty-five minutes before having to get up and alternate his position. (Tr.56). Assuming the outlined limitations, the ALJ asked Dr. Magrowski whether Claimant would be able to maintain himself at a work station with proper attention and concentration and whether there are any jobs somebody his age, education, and past background could perform. (Tr. 56-57). Dr. Magrowski opined that Claimant does not have any transferrable skills except his GED but that Claimant could work as an order clerk, a sedentary and unskilled job. (Tr. 57). Dr. Magrowski testified that there exists in excess of 2,000 such jobs in the state and over 47,000 jobs in the national economy. Further, examples of other jobs would

be a surveillance system monitor or a video monitor with 600 jobs in state and over 5,000 jobs in the national economy in addition to packing work jobs with over 1,000 jobs in the state and over 10,000 jobs in the national economy. (Tr. 57). Another job would be cashiering in a cashier booth or a ticket seller. (Tr. 58).

The ALJ then asked Dr. Magrowski to assume that he finds Claimant more limited in that he has problems lifting his arms overhead and some arthritic problems on his right shoulder, would Claimant still be able to perform the jobs because he would be required to do a lot of overhead lifting. (Tr. 58). Next, the ALJ asked Dr. Magrowski to assume that he credits Claimant's testimony more fully regarding his inability to deal with the pain by having to alternate positions and having to lie down for periods of time every day thus requiring Claimant to leave his work station. Dr. Magrowski opined that if such limitations were credible, Claimant could not perform either the jobs outlined in his testimony nor any type of competitive work. (Tr. 58).

### 3. Forms Completed by Claimant

In the Claimant Questionnaire completed on July 17, 2001, Claimant reported being able to do the laundry and the dishes and some light household repairs. (Tr. 129). Claimant reported his activities to include reading a lot, watching television, and listening to music. (Tr. 130). Although Claimant has his license, he cannot drive no more than fifteen to twenty minutes before having to stop and walk around. (Tr. 130). Claimant cares for his two dogs. (Tr. 131).

In the Report of Contact dated August 6, 2001, Claimant apprised the counselor of his intention to no longer seek medical treatment from any other doctors due to money. (Tr. 125).

In the Adult Function Report dated June 20, 2005, Claimant reported his daily activities to

include assisting with light housework including the laundry, mowing, helping with meals, reading and watching television and going out to the yard if he feels okay. (Tr. 320, 322). Claimant also reported taking care of his wife and daily chores. (Tr. 321). Claimant explained that he helps his wife prepare meals each day for thirty minutes. (Tr. 322). Claimant drives a car and shops in the grocery store every two weeks. (Tr. 323). Claimant reported being able to lift forty pounds and being able to stand, walk, sit, or stair climb for thirty minutes but squatting, bending, kneeling, and reaching causes him pain. (Tr. 325).

In the Adult Disability Report, Claimant reported being unable to work because of his back and shoulders. (Tr. 328). Claimant noted that his conditions first bothered him on February 7, 1994, and he became unable to work on December 19, 2002. (Tr. 329).

## III.    Medical Records

On August 17, 1989, Dr. A.Basit Chaudhari at the Neurology Clinics evaluated Claimant's low back pain lasting four months. (Tr. 247, 262). Claimant reported the pain being sudden at onset with frequency increasing the last six weeks. (Tr. 247, 262). Examination revealed tenderness at the lumbo-sacral junction, minimal paraspinal spasms, and straight leg raising 75% on the right side and 45% on the left side. (Tr. 248, 263). Dr. Chaudhari found Claimant's back pain to be musculosketal in origin and prescribed Elavil, Skelaxin, and Ibuprofen 800 mg. (Tr. 248, 263). On August 28, 1989, Claimant returned to Dr. Chaudhari and reported seeking a third opinion from Dr. Trueblood. (Tr. 261). Claimant had not ruled out the surgical procedure at L4-5 level and noted that medications not working well. (Tr. 261).

In a reevaluation appointment on August 31, 1989, Dr. Chaudhari noted that his recent CT scan of the lumbar spine revealed discogenic bulges at L4-5 and L5-S1 interspace levels which

appear to be quite prominent at the lateral recesses.  (Tr. 246, 261).  Examination showed tenderness at the lumbosacral junction and slight paraspinal spasm and straight leg raising 75% on the right side and 45% on the left side.  Dr. Chaudhari prescribed Flexeril, Restorial, Elavil, and Ibuprofen 800 mg as treatment and determined to reevaluate Claimant in one month.  (Tr. 246, 261).  The x-ray revealed no evidence of neural encroachment at L3-4, a very mild herniated nucleus pulposus to the left of the midline at L4-5, and lateral recess stenosis and displacement of the exiting nerve root.  (Tr. 264).

The lumbosacral myelogram of September 12, 1989, revealed evidence suggesting left sided disc herniation a the L4-5 level and possible posterolateral disc hernation of the L5-S1 disc with questionable significant impingement on the adjacent right S1 nerve root.  (Tr. 249-50, 267).


On October 10, 1989, Dr. Kim performed surgical treatment of his herniated disc at L4-5 on his left side at St. Francis Medical Center.  (Tr. 223-24, 265).  Dr. Kim noted that Claimant tolerated the procedure well.  (Tr. 227-29).  Claimant reported experiencing back pain and hip pain on his left side with radiating sciatic pain for over six months.  (Tr. 225).  Previously, Dr. Chaudhari had treated Claimant with conservative treatment and performed a lumbar myelogram which showed a moderate size herniated disc at L5-S1 on the left side with compression of the nerve root S1.  (Tr. 225).  In a follow-up visit, Claimant reported doing well following his recent discectomy at L4-5level on the left side performed by Dr. Kim.  (Tr. 261).  Dr. Chaudhari found Claimant to have excellent results status post laminectomy and discectomy.  (Tr. 261).

In a follow-up appointment on February 7, 1990, Claimant reported that he occasionally has low back pain.  (Tr. 260).  Examination revealed minimal tenderness at the lumbo-sacral

junction and straight leg raising 85-90% on each side. Dr. Chaudhari demonstrated back exercises. On June 7, 1990, Claimant reported no low back pain. Dr. Chaudhari ordered Claimant to continue his back exercises and noted Claimant is not taking any medication. (Tr. 260).

On February 7, 1994, Claimant received treatment for lower back pain at Missouri Delta Medical Center. (Tr. 214). Claimant reported being injuring lifting at work. (Tr. 214).

On February 16, 1994, Claimant started a course of physical therapy treatment at Missouri Delta Medical Center as prescribed by Dr. Young as treatment for his low back pain. (Tr. 208-09).

On May 5, 1994, Dr. Paul Young performed a elective lumbar microdiscetomy L4-L5 at St.

Anthony's Medical Center as treatment for his degenerative lumbar disk disease. (Tr. 161-63, 178). In the History section, Claimant reported injuring his back lifting in February and being status post lumbar disk surgery in 1989. (Tr. 164). After receiving extensive conservative treatment measures without lasting improvement, Claimant reported the pain remained disabling and severe. Claimant reported smoking over a pack of cigarettes each day for twelve years. (Tr. 164). After the surgery, Dr. Young noted that Claimant tolerated the procedure well. (Tr. 165, 172). After calling into the hospital prescriptions for Claimant that evening, Dr. Young discharged Claimant from the hospital. (Tr, 197).

On June 6, 1994, Dr. Young prescribed a progressive reconditioning program for Claimant lasting four to six weeks two to three times a week. (Tr. 206).

In Claimant's Stipulation for Compromise Settlement dated May 12, 1995, the record

reflects that he settled his Workers' Compensation claim for 20% of the body as a whole referable to low back, and his work related injury occurred on February 7, 1994. (Tr. 97).[3]

On March 5, 2000, Claimant received treatment for lumbar strain at Missouri Delta Medical Center after being in a car accident. (Tr. 215, 217). Examination by Dr. Brad Angelos, the attending physician, showed some mild discomfort present in the paravertebral area in his lumbar area on the left side. (Tr. 217). Dr. Angelos prescribed Ansaid and Flexeril. (Tr. 215). The x-ray showed no fracture and osteoarthritis mostly of L4-L5 and to a lesser extent of the remaining part of the lumbar spine. (Tr. 220). Dr. Angelos instructed Claimant to apply ice on the blades of his back for twenty four to thirty six hours to reduce the pain and swelling. (Tr. 221).

On June 28, 2001, during an office visit at Southeast Missouri Health Network, Claimant reported left shoulder pain starting one month earlier. (Tr. 288, 296). The treating medical professional noted left shoulder busitis on July 6, 2001. (Tr. 287, 295). On July 10, 2001, the treating doctor noted that Claimant needs a shot for the pain in his left shoulder and administered a cortisone shot. (Tr. 286, 294). In the return visit on July 24, 2001, Claimant reported continued pain in his left shoulder and the doctor noted that Claimant should be referred to an orthopedic but Claimant indicated that he is financially unable to afford such doctor. (Tr. 283, 293). The x-ray of Claimant's left shoulder showed no fracture or dislocation and evidence of

---

[3]The undersigned notes that Claimant's contention that the ALJ erred in finding that the worker's compensation settlement did not support a finding of disability is without merit inasmuch as the ALJ is not bound by the disability rating of another agency when evaluating whether a claimant is disabled for purposes of Social security benefits. 20 C.F.R. § 404.1504; Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006); Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994) ("There is no support for [the claimant]'s contention that his sixty-percent serveice-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.").

minimal early osteoarthritis causing increased density at the greater tuberosity. (Tr. 297). In follow-up visits on August 7 and September 18, 2001, Claimant reported continued shoulder pain and received steroid shots as treatment. (Tr. 283-84). On October 23, 2001, the doctor noted that Claimant was unable to do the passive range of motion exercises due to his pain. (Tr. 282). The doctor continued Claimant's pain medications and noted that Claimant needs a MRI, an orthopedic referral, and physical therapy. (Tr. 282).

In response to the medical record request dated July 16, 2001, the St. Anthony's Medical Center Medical Record Department indicated that the hospital did not have any medical records for Claimant during the time period from 1995 to the present. (Tr. 155-56).

In the Physical Residual Functional Capacity Assessment completed on September 18, 2001, Dana Taylor, a senior counselor for Disability Determinations, listed left shoulder bursitis as Claimant's primary diagnosis and failed back syndrome as the secondary diagnosis. (Tr. 111-18). Ms. Taylor indicated that Claimant can occasionally lift twenty pounds, frequently lift ten pounds, and stand and sit about six hours in an eight-hour workday. (Tr. 112). Ms. Taylor noted that Claimant has unlimited capacity to push and/or pull. (Tr. 112). With respect to postural limitations, Ms. Taylor indicated that Claimant can frequently climb, balance, stoop, and crouch and occasionally kneel and crawl due to his past history of two lumbar surgeries and diagnosis of failed back syndrome. (Tr.113). Ms. Taylor noted that Claimant has no established visual, communicative, or environmental limitations and has an established manipulative limitation with reaching in all directions. (Tr. 114-15). In support, Ms. Taylor noted that Claimant alleges disability due to back and left shoulder problems. (Tr. 116). Claimant reported doing the laundry, the dishes, and some light household repairs without difficulty.

Claimant reads, watches television, and listens to music. Claimant has a current driver's license but reported only being able to drive for fifteen to twenty minutes before having to stop so that he can walk around. Ms. Taylor found Claimant's allegations to be partially credible inasmuch as he reported no problems with standing and doing the dishes, watching television, and reading a lot, but he cannot drive without stopping every fifteen to twenty minutes to walk around. (Tr. 116).

In the initial visit on referral by Ms. Taylor for evaluation, Dr. Riyadh Tellow, an neurologist, Claimant reported pain in his lower back and left buttock since 1989. (Tr. 289). Claimant reported the pain precludes him from working and standing, bending, lifting, and squatting increase the pain. Rest and medication alleviate the pain. Claimant also has pain in his left shoulder and has received steroid injections. Examination showed ability to flex his spine 70%, localized tenderness in his left buttock and lumbosacral region, and some tenderness and diminished range of motion of his left shoulder. (Tr. 289). Dr. Tellow suggested neurontin to alleviate his back pain and possible evaluation of his left shoulder. (Tr. 290).

In the Emergency Physician Record at Missouri Delta Medical Center dated November 21, 2001, Claimant reported pain in his left shoulder. (Tr. 274-75). Examination revealed tenderness and pain in his left shoulder. (Tr. 275). The treating doctor diagnosed Claimant with a sprain. (Tr. 276).

The x-ray dated November 23, 2001, of Claimant's cervical spine revealed osteoarthritis with anterior spur formation mostly of C4-C5 and C5-C6. (Tr. 278). The x-ray of his left shoulder and neck revealed minimal osteoarthritis. (Tr. 277).

In an office visit on March 26, 2002, Claimant reported left shoulder pain. (Tr. 272). Dr. Theodore Roberts examined Claimant and diagnosed him with left shoulder pain, lumbar strain,

and chronic back pain syndrome. Dr. Roberts gave Claimant samples of Vioxx and Skelaxin. (Tr. 272). In a follow-up visit on April 26, 2002, Claimant reported a possible torn rotator cuff. (Tr. 271). Examination revealed a decreased range of motion in his left shoulder. Dr. Roberts gave Claimant samples of Vioxx and Ultracet. (Tr. 271).

On May 2, 2002, Dr. Ovidiu Krausz evaluated Claimant's left shoulder pain. (Tr. 270). Claimant reported receiving a cortisone shot and having some relief from the pain for a week. Claimant noted that he does not work and does not have any insurance, and he would like to get disability. Examination revealed some minimal neck muscle spasm on the left side and some tenderness over the trapezius muscle. Dr. Krausz noted no abnormalities of Claimant's left shoulder but a decreased range of motion and a decreased grip in his left hand. Claimant complained of pain when Dr. Krausz tried to mobilize his shoulder. Dr. Krausz gave Claimant samples of Bextra and Zanaflex and offered a corticosteroid injection, but Claimant declined noting that the injection only provides temporary relief. Dr. Krausz noted that he would schedule an appointment for Claimant with an orthopedic as soon as possible. (Tr. 270).

In a letter dated July 2, 2002, in response to a query from Congresswoman Emerson on behalf of Claimant, Denise Cross, the Director of the Missouri Department of Social Services, Division of Family Services, explained as follows:

> A review of the case record for the above mentioned client reflects that Mr. Johnson applied for Medical Assistance and General Relief on May 14, 2002. The Scott County Family Services Office is in the process of establishing eligibility for disability for these programs. The Medical Review Team on June 27th requested an orthopedic consultation, which the County Office is in the process of setting up. The client will be notified in the usual manner when a final decision is reached.

(Tr. 102).

In the chart note dated August 15, 2002, Claimant reported complaints of pain in his left shoulder starting a year ago and lower back. (Tr. 257). Claimant reported last working in 1994. Claimant injured his back in a work related injury while lifting and thereafter had two back operations. Examination revealed good range of motion of his cervical spine. With assistance, Claimant able to abduct as far as 110-120% on his left side. Dr. Raymond Ritter noted that Claimant requested to have x-rays of his left shoulder made for Family Services, but his request was denied. (Tr. 257-58). Clinically, Dr. Ritter found Claimant to have evidence of tendinitis of his left shoulder and possibly some arthritic change. (Tr. 257). Dr. Ritter noted that Claimant would have difficulty doing any overhead work with his left arm, difficulty bending, and doing any lifting activities because of his continued problem with his lower back. Dr. Ritter further found that Claimant would be able to tolerate other light duty activities. (Tr. 257).

On December 16, 2002, Dr. Hameeduddin Khain treated Claimant for his shoulder pains. (Tr. 407-08). Dr. Khain noted that Claimant had been treated with steroid shots for his left shoulder pain a couple of months earlier, but the shots did not alleviate his pain. Claimant reported having a medical card and requesting a referral to an orthopedist. Claimant reported increased pain in his left shoulder and a decreased range of motion. Examination revealed a severely limited range of motion in Claimant's left shoulder. Dr. Khain prescribed Bextra and Ultracet, ordered a left shoulder MRI, and referred Claimant to an orthopedist, Dr. Eugene Hansbrough. (Tr. 407-08). The MRI of Claimant's upper left extremity joint on December 24, 2002, revealed irregular increased signal intensity of the attachment of the rotator cuff tendon of the left shoulder and a partial tear, presence of tenosynovitis of biceps tendon, and changes of minimal early osteoarthritis. (Tr. 415).

On December 30, 2002, Dr. Hansbrough evaluated Claimant for impingement syndrome. (Tr. 405). Dr. Hansbrough determined to have an arthrogram to rule out rotator cuff pathology. (Tr. 406).

The left shoulder arthrogram performed on January 3, 2003, showed mild degenerative changes and a complete rotator cuff tear. (Tr. 410).

On January 7, 2003, Dr. Hansbrough noted that he checked Claimant's left shoulder and scheduled a rotator cuff repair and acromioplasty. (Tr. 403). Dr. Hansbrough performed rotator cuff repair and acromioplasty on January 21, 2003. (Tr. 404). After surgery, Dr. Hansbrough noted that Claimant tolerated the procedure well. (Tr. 404).

In a follow-up visit on January 28, 2003, Dr. Hansbrough prescribed physical therapy after rotator cuff repair. (Tr. 403).

On referral of a complete physical for life insurance on February 24, 2004, Dr. Colleen Hunter examined Claimant at Missouri Delta Physician Services. (Tr. 418). Claimant reported pain in his left shoulder as his only complaint and requested a refill on his Flexeril prescription. Claimant noted that he otherwise is without complaints. Claimant did not report any chronic medical problems. Examination showed "[i]n general healthy male not in any acute distress." (Tr. 418). Dr. Hunter noted some pain upon palpation over the AC joint of his left shoulder and pain with abduction to 60 degrees. The range of motion of the shoulder appeared to be within normal limits and rotator cuff appeared to be intact. (Tr. 418). In the assessment, Dr. Hunter noted Claimant's left shoulder pain, most likely rotator cuff tendinitis, and prescribed Vioxx and refilled Flexeril. (Tr. 419).

The April 15, 2005, x-ray of Claimant's right shoulder showed no evidence of sclerotic or

lytic mass and no abnormal calcification.  (Tr. 412).  The MRI showed rotator cuff tendinitis

without distinct tear.  (Tr. 413).  The x-ray of Claimant's left shoulder revealed very minimal early

osteoarthritis.  (Tr. 414).

On July 27, 2005, Dr. Kathryn Phyfer evaluated Claimant for a consultative disability

examination at the agency's request.  (Tr. 393-98).  Claimant reported pain from his middle to

lower back and medications including Nabutome and Zanaflex.  (Tr. 393).  Claimant reported

smoking one package of cigarettes a day.  (Tr. 393).  Dr. Phyfer observed that Claimant did not

appear to be in distress while sitting during the examination.  (Tr. 394).  Examination showed

marked decreased range of motion of his back and spine due to pain and marked decreased range

of motion of his right shoulder due to pain.  (Tr. 394).  Claimant had a full range of motion in his

left shoulder.  His lumbar flexion/extension was limited to 30% but he had full lateral flexion.  (Tr.

394).  Claimant had difficulty putting on his shirt.  (Tr. 395).  Claimant was able to climb onto the

examining table without assistance or difficulty.  Dr. Phyfer noted that Claimant had a normal gait

and had pain with heel-and- toe walk.  Dr. Phyfer diagnosed Claimant with chronic back pain and

severe limitations in range of motion in his right shoulder due to pain.  (Tr. 395).  In response to

the question regarding Claimant's ability to perform work-related functions despite any observed

functional limitations, Dr. Phyfer opined as follows:

> [Claimant's] ability to sustain prolonged sitting or walking is decreased and has
> difficulty in transition (i.e. standing to sitting).  His ability to lift and carry objects
> is minimal at best as these are actions that exacerbate his back pain.

(Tr. 398).  In response to the Disability Determination question regarding whether Claimant's

clinical presentation the date of the consultative examination consistent with a diagnosis of

osteoarthritis, Dr. Phyfer responded yes and noted in addition to and accelerated by previous

injury.  (Tr. 312).

## IV.   The ALJ's Decision

The ALJ found that Claimant meets the disability insured status requirements through the date of his decision.  (Tr. 20).  Claimant has not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 20).  The ALJ found that the medical evidence establishes that Claimant has the severe impairments of lumbar degenerative disc disease, status post two microdiskectomies and left shoulder degenerative joint disease, and status post rotator cuff repair surgery, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 20-21).  The ALJ found that Claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not entirely credible because the medical record does not substantiate the intensity and persistence of his alleged pain and the degree of functional limitation.  (Tr. 17-18, 21).  Likewise, the ALJ noted that there are conflicting and contradictory statements throughout Claimant's medical records.  (Tr. 17, 21).  The ALJ also cited to the observations by examining medical professionals and the lack of prescription pain medications.  (Tr. 17).  Next, the ALJ cited Claimant's work history including his modest earnings and significant variances in income. (Tr. 17).

The ALJ found that Claimant has had the residual functional capacity to perform a significant range of light work that involves lifting no more than twenty pounds at a time and frequently lifting or carrying up to ten pounds; and sitting, standing, or walking, off and on, for a total of six hours in a regular eight hour work day with the sit/stand option every thirty to forty-five minutes.  (Tr. 21).  The ALJ determined that Claimant is unable to perform any of his past

relevant work.  The ALJ noted that Claimant is a younger individual with a high school education, and he has no transferable skills from any past relevant work.  (Tr. 21).

Considering Claimant's residual functional capacity, the ALJ determined that Claimant can perform a full range of light work.  (Tr. 21). The ALJ noted that there are jobs that exist in significant numbers in the national economy that a hypothetical individual with Claimant's residual functional capacity could perform.  The ALJ found that Claimant was not under a disability at any relevant time through the date of his decision.  (Tr. 21).

## V.     Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for

disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will

affirm the Commissioner's decision as long as there is substantial evidence in the record to

support his findings, regardless of whether substantial evidence exists to support a different

conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative

record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to
exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the
claimant's impairments.

6. The testimony of vocational experts when required which
is based upon a proper hypothetical question which sets forth the claimant's
impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

At the outset, the undersigned addresses an inaccuracy in the ALJ's decision. As pointed

out by Claimant, in the decision the ALJ noted "[t]here is no evidence that he was ever refused

medical treatment because he did not have medical insurance or inability to pay or that he ever

sought treatment at a clinic or other facility that provides services with reduced charges based on

a limited or lack of ability to pay." (Tr. 18). Claimant contends that this statement is inaccurate

inasmuch as he received treatment for his left shoulder pain at Southeast Missouri Health

Network from June 28, 2001, through October 23, 2001.  (Tr. 282-88, 293-96).

This inaccuracy, without more, does not serve as a basis for remand.  The alleged failure to seek reduced cost medical treatment was just one of several factors that the ALJ considered in his credibility determination and in denying benefits.  Since the ALJ properly considered all of the evidence, this misstatement quoted above does not serve as a basis for remand.  See Johnson v. Apfel, 240 F.3d 1145, 1149 (8th Cir. 2001) ("Any arguable deficiency ... in the ALJ's opinion-writing technique does not require [the reviewing] Court to set aside a finding that is supported by substantial evidence.")  In addition, the ALJ limited his discussion of the topic to one sentence of the twelve-page decision.  Under Johnson, the ALJ did not place too much emphasis on the inaccurate fact that Claimant never sought treatment at a clinic or other facility that provides services with reduced charges based on a limited or lack of ability to pay.

Likewise, Claimant testified at the hearing he could not afford medical treatment due to lack of finances and insurance, and the record has evidence suggesting that Claimant sought and received treatment offered to indigents, but never chose to forgo smoking one pack of cigarettes a day to help finance medical treatment or pain medication.  See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(noting that financial hardships can be considered in determining whether to award benefits; however, that is not of itself determinative.  The court found compelling that plaintiff presented no evidence she sought out low-cost medical treatment, or was denied treatment due to lack of finances); see also Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) ("Although [claimant] claims he could not afford such medication, there is no evidence to suggest that he sought any treatment offered to

indigents or chose to forego smoking three packs of cigarettes a day to help finance pain medication."). Except for Claimant's hearing testimony, the record does not document that Claimant was ever refused treatment due to insufficient funds. *See* <u>Osborne v. Barnhart</u>, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he related of an inability to afford prescriptions and denial of the medication); <u>Riggins</u>, 177 F.3d at 693 (If a claimant is unable to follow a prescribed regimen of medication and therapy to combat his difficulties because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits); <u>Murphy</u>, 953 F.2d at 386. The fact that a claimant is under financial strain, however, is not determinative. <u>Id.</u> Here, as the ALJ points out, the record is devoid of any credible evidence showing that Claimant was denied treatment due to lack of finances.

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess Claimant's credibility regarding his subjective complaints of constant pain. Further, Claimant contends that the ALJ failed to properly formulate his residual functional capacity.

A.    Credibility Determination

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 816 (8th Cir. 2003); <u>Jones v. Chater</u>, 86 F.3d 823, 826 (8th Cir. 1996); <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must also consider all of the evidence relating to the Claimant's prior work

history, the absence of objective medical evidence to support the complaints, and third party observations as to:

1.    claimant's daily activities;

2.    duration, frequency and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness and side effects of medication;

5.    functional restrictions.

Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (stating factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

The undersigned recognizes that pain itself may be disabling.  See Loving v. Department of Health & Human Servs., 16 F.3d 967, 970 (8th Cir. 1994).  However, "the mere fact that working may cause pain or discomfort does not mandate a finding of disability."  Jones, 86 F.3d at 826.  "[T]he real issue is how severe the pain is."  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)).  While there is no doubt that claimant experiences pain, the more important question is how severe the pain is. Gowell, 242 F.3d at 796.

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole.  Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448,

452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints of functional limitations, the five-year gap in medical treatment for Claimant's lower back pain, the lack of ongoing medical treatment for his lower back, the lack of prescription pain medications, poor work history, the testimony adduced at the hearing, and Claimant's self-reported daily activities. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities); see also Pearsall

v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability." (citation omitted)). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work during the relevant time period. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). The record is devoid of medical records for

treatment from June 6, 1994, until March 5, 2000. Likewise, certain medical findings and treatment recommendations by Dr. Angelos and Dr. Tellow were not consistent with disability. In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. Further, the ALJ noted that despite his allegations of persistent pain, Claimant has not received ongoing medical attention or treatment for his pain. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."); See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling condition). At the hearing, Claimant testified that he was no longer receiving treatment for his back pain, nor was he taking any prescription pain medication. Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). As noted by the ALJ, when being evaluated for life insurance, Claimant reported some left shoulder pain, and examination revealed a normal range of motion in Claimant's shoulders. Claimant noted that he was "[o]therwise without complaints." (Tr. 418). Likewise, the undersigned notes that the record shows that when Claimant received Medicaid coverage, he did not seek any treatment for his back impairment, only repair of his left shoulder. Likewise, the medical evidence is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment although Claimant testified otherwise at the hearing. See

Id.. After undergoing a rotator cuff repair and acromioplasty in January, 2003, Claimant's functional use of his left shoulder had been restored. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Case law permits the ALJ's reasonable inferences. See Pearsall v. Massanari, 274 F.3d 1218. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Id. at 1218 (citation omitted).

Further, the ALJ noted how by his own admission, Claimant is able to engage in household chores and activities and such activities were not consistent with his claim of disability. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."). The ALJ opined these to be consistent with a significant range of light work. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where claimant was able to care for one of his children on a daily basis, drive car infrequently, and go grocery shopping occasionally). These observations are supported by substantial evidence on the record as a whole.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in

making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints.  See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court.  Id.; Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (holding that where adequately supported, credibility findings are for the ALJ to make); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).  Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings.  See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility.  The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility.  See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence).  Those included Claimant's minimal, ongoing medical treatment, his lack of functional restrictions by any physicians, his daily activities, lack of objective medical evidence for his lower back, the lack of prescription pain medications, poor work history, the testimony adduced at the hearing, and Claimant's self-reported daily

activities. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B.    Residual Functional Capacity

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility. "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004). It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766,

768 (8th Cir. 2003); <u>McKinney v. Apfel</u>, 228 F.3d 860 863 (8th Cir. 2000) (citing <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995)). "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses." SSR 85-16. SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered." SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. <u>See</u> <u>Anderson v. Barnhart</u>, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); <u>Pearsall</u>, 274 F.3d at 1218. In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole. <u>Holstrom v. Massanari</u>, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). In <u>Polaski</u>, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. <u>Singh v. Apfel</u>, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ must do more than rely on the mere invocation of <u>Polaski</u> to insure safe passage for his or her decision through the course of appellate review." <u>Harris v. Shalala</u>, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each <u>Polaski</u> factor methodically. The ALJ's analysis will be accepted as long as the

opinion reflects acknowledgment and consideration of the factors before discounting the

claimant's subjective complaints. <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See</u> <u>also</u>

<u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ is only required to consider

impairments he finds credible and supported by substantial evidence in determining a claimant's

RFC. <u>See</u> <u>McGeorge v. Barnhart</u>, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited

his RFC determination to only the impairments and limitations he found to be credible based on

his evaluations of the entire record." )

The ALJ's determination of Claimant's RFC is supported by substantial evidence in the

record. Likewise, the ALJ noted several inconsistencies within the record, and he pointed out the

lack of supporting objective medical evidence. The ALJ opined that the medical record does not

show that any physician imposed any functional restrictions of Claimant or found him to be totally

disabled. Indeed, the ALJ highlighted the lack of documentation in the treatment records of

restrictions upon Claimant's functional capacity ever placed on Claimant. The ALJ also properly

considered the <u>Polaski</u> factors in concluding that Claimant's subjective complaints of pain and

discomfort are "not supported by objective medical evidence and thus "are not afforded much

weight because the alleged level of impairment is inconsistent with the preponderance of the

evidence as a whole." (Tr. 16). As an example, the ALJ cited the conflicting and contradictory

statements throughout Claimant's medical records including how Claimant's only complaint to

Dr. Hunter was his shoulder pain with no mention being made about his back pain or problems

with his back. The ALJ listed facts from Claimant's hearing testimony regarding the <u>Polaski</u>

factors and the medical record that reflected upon Claimant's ability to perform a significant

range of light work such as his daily activities of preparing of the meals and doing most of the

housework in addition to the lack of pain relief medications and lack of ongoing medical treatment. Further, the ALJ pointed out other inconsistencies in the record that tended to militate against Claimant's credibility. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, and his failure to seek regular and sustained treatment. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a significant range of light work. The ALJ's determination does not contradict any of the medical evidence, and nothing else in the record detracts from his decision. Based on the ALJ's analysis of the medical evidence and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence to support a finding that Claimant retains an RFC to perform a significant range of light work. Thus, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant could lift no more than twenty pounds at a time and frequently lift or carrying up to ten pounds; and sit, stand, or walk, off and on, for a total of six hours in a regular eight hour work day with the sit/stand option every thirty to forty-five minutes. The ALJ thus concluded that Claimant could not perform any of his past relevant work but would be able to meet the demands of a significant range of  light work.

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d

1210, 1213 (8th Cir. 1993) (quoting <u>Locher v. Sullivan</u>, 968 F.2d 725, 727 (8th Cir. 1992)).

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.


Dated this __29th__ day of September, 2008.

_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE